UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

THERESA A. MILLSAP,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:16-cv-00103

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 9), Plaintiff's reply (doc. 10), the administrative record (doc. 6), and the record as a whole.[2]

**I.**

**A.**     **Procedural History**

Plaintiff filed an application for DIB asserting disability as of September 1, 2004 as a result of a number of impairments including, *inter alia*, chronic obstructive lung disease, carpal tunnel syndrome, and depression. PageID 201, 322-23.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

After an initial denial of her application, Plaintiff received a hearing before ALJ Gregory Kenyon on September 30, 2014. PageID 211-36. The ALJ issued a written decision on November 26, 2014 finding Plaintiff not disabled. PageID 199-207. Specifically, the ALJ's findings were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2004 through her date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).

3. Through the dates last insured, the claimant had the following severe impairments: chronic obstructive lung disease; degenerative disk disease of the lumbosacral spine; degenerative joint disease of the lumbosacral spine; carpal tunnel syndrome; mild degenerative joint disease of the knees; and depression (20 CFR 404.1520(c)).

4. Through the dates last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant had the residual functional capacity ["RFC"] to perform light work[3] as defined in 20 CFR 404.1567(b), subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional overhead reaching; (5) no concentrated exposure to temperature extremes or respiratory irritants; (6) frequent use of the hands for handling and fingering; and (7) limited to performing unskilled, simple, repetitive tasks.

6. Through the dates last insured, the claimant was unable to perform any

---

[3] The Social Security Administration ("SSA") classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

> past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1960 and was 49 years old, which is defined as a younger individual age 18-49, on the latter date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dates last insured, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 1, 2004, the alleged onset date, through December 31, 2009, the date last insured for cash benefits, or through March 31, 2010, the date last insured for eligibility to Medicare (20 CFR 404.1520(g)).

PageID 199-207.

Thereafter, the Appeals Council denied review on February 25, 2016, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 58-63. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

B. **Evidence of Record**

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 202-03. Plaintiff, in her Statement of Errors, also summarizes the evidence of record. Doc. 7 at PageID 1884-87. The Commissioner also summarizes the evidence of record and presents no objection to Plaintiff's summary. Doc. 9 at PageID 1900-02. Except as

3

otherwise noted herein, the undersigned incorporates the summary of evidence as set forth by the ALJ and Plaintiff.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a

"disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

**III.**

In her Statement of Errors, Plaintiff argues that the ALJ failed to: (1) properly evaluate her credibility and allegations of disabling pain; (2) incorporate her difficulties in maintaining concentration, persistence, or pace in the hypothetical questions posed to the Vocational Expert ("VE"); and (3) properly make a Step Five determination supported by substantial evidence. Doc. 7 at PageID 1890-94. Finding Plaintiff's first alleged error to be well taken, the

5

undersigned does not address the merits of Plaintiff's remaining two contentions.

With regard to credibility and allegations of disabling pain and symptoms, Plaintiff argues that the ALJ failed to comply with Social Security Ruling ("SSR") 96-7p. A reviewing Court must "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted). Nevertheless, in setting forth a credibility finding, the ALJ's determination "cannot be based on an intangible or intuitive notion about an individual's credibility[,]" and instead, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." *See* SSR 96-7p. In fact, the ALJ must set forth "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Pursuant to 20 C.F.R. § 404.1529 and SSR 96-7p, upon determining that "an underlying physical or mental impairment" exists "that could reasonably be expected to produce the individual's pain or other symptoms[,]" the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *See* SSR 96-7p. Where a claimant's subjective complaints concerning "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must then determine the claimant's credibility "based on a consideration of the entire case record." *See id*. In considering the entire case record, 20 C.F.R. § 404.1529 and SSR 96-7p also require consideration of the following factors:

    1.     The individual's daily activities;

2.     The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.     Factors that precipitate and aggravate the symptoms;

4.     The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.     Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.     Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.,* lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.     Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p; *see also* 20 C.F.R. § 404.1529(c)(3).

Here, Plaintiff testified that she experienced pain, swelling, burning, and locking in her knees that frequently resulted in her being unable to stand up. PageID 220-21. Plaintiff further testified that, on a day-to-day basis, she rated her knee pain as an "eight" out of "ten." *Id*. The ALJ found that Plaintiff's "allegations and subjective complaints lack[ed] credibility to the extent that they purport[ed] to describe a condition of disability for Social Security purposes through the dates last insured." PageID 206. In making his determination, the ALJ found the following:

> While diagnostic imaging studies demonstrated degenerative joint disease with internal derangement of both knees, there is no evidence that the claimant had any knee surgeries through the dates last insured: again, all treatment was conservative. The level of treatment during the period at issue supports limiting the claimant to work at the light level exertion at most. Postural restrictions have been included to further take into account the effects of the claimant's musculoskeletal problems.

PageID 205. The Court finds the ALJ's assessment of Plaintiff's symptoms and credibility unsupported by substantial evidence for three reasons: (1) Plaintiff's lack of knee surgery does not lessen her credibility; (2) the ALJ failed to acknowledge extensive additional and relevant

7

medical evidence supporting Plaintiff's pain allegations; and (3) the ALJ failed to specifically articulate how he made his credibility determination.

First, the ALJ insinuated that Plaintiff's failure to have knee surgery revealed her pain level could not have been severe. PageID 205. The ALJ points to no portion of the record where any physician recommended that Plaintiff should have surgery on both of her knees. Indeed, treatment notes in the record indicate that Plaintiff was "advised that it was uncertain whether surgery would help[.]" Page ID 780. Moreover, given the inherent risks associated with any surgery, the fact that Plaintiff did not have surgery on either or both of her knees fails to create a reasonable inference that her pain level was not severe. *See Ladwig v. Comm'r of Soc. Sec.,* No. 3:15-cv-00128, 2016 WL 3434024, at *9 (S.D. Ohio June 22, 2016) (finding claimant's act of avoiding or delaying surgery failed "to create a reasonable inference that his pain levels were not severe" in light of "the inherent risks associated with any surgery"). Likewise, it is unclear how Plaintiff's course of conservative treatment, where surgery has not been recommended, impacts his credibility. *See Pickett v. Astrue,* No. 3:10-cv-177, 2011 WL 1626559, at *8 (S.D. Ohio April 28, 2011) (finding it "unclear how Plaintiff's course of 'conservative' [treatment] at the direction of his neurologist, in light of the fact that no further surgical interventions are recommended, impacts the credibility of Plaintiff's complaints of pain").

Second, the ALJ failed to acknowledge extensive and additional relevant medical evidence supporting Plaintiff's allegations of pain. For example, the ALJ failed to acknowledge medical records from 2002 documenting Plaintiff's knee pain, as well as the swelling of Plaintiff's left knee. PageID 641, 655. Similarly, the ALJ failed to consider treatment notes from Wright State Orthopedics and Sports Medicine dated January 17, 2007 documenting a medial meniscus tear, OCD lesion, patellofemoral pain, disuse atrophy, 1+ tibial pulse and anterior compartment crepitus with seated knee extension (more aggressively on the left than

right), a positive compression test, a positive McMurray's test, and a positive medial joint line tenderness.[4]  PageID 696.

As set forth in SSR 96-7p, when the record contains findings "that may result from, or be associated with, the symptom of pain," such " findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects." *See Pickett*, 2011 WL 1626559, at *8.  The Court finds that the ALJ's failure to fully and fairly consider all medical evidence in the record merits reversal and remand.  *See* King v. Heckler, 742 F.2d 968, 974-75 (6th Cir. 1984).

Finally, beyond remarking on Plaintiff's lack of knee surgeries and conservative treatment, the ALJ offers no explanation as to how the record as a whole supports a finding that Plaintiff lacks credibility.  Nor does the ALJ offer an analysis of the majority of the 96-7p factors as they relate to Plaintiff's specific allegations.  *See* SSR 96-7p; *see also*

---

[4] A meniscus is a piece of cartilage that acts like a cushion between the shinbone and thigh bone. A torn meniscus causes pain, swelling, stiffness, and trouble extending the knee fully. Mayoclinic.org, meniscus tear definition, http://www.mayoclinic.org/diseases-conditions/torn-meniscus/basics/definition/con-20029237 (last visited Nov. 1, 2016).  Osteochondritis dissecans (OCD) is a joint condition in which bone underneath the cartilage of a joint dies due to lack of blood flow.  This bone and cartilage can then break loose, causing pain and possibly hinder joint motion. Mayoclinic.org, Osteochondritis dissecans definition, http://www.mayoclinic.org/diseases-conditions/osteochondritis-dissecans/basics/definition/CON-20024803 (Last visited on Nov. 11, 2016).  Patellofemoral pain is pain at the front of the knee and around the kneecap.  The knee pain often increases when one runs, walks up or down stairs, sits for long periods, or squats.  Mayoclinic.org, Patellofemoral pain definition, http://www.mayoclinic.org/diseases-conditions/patellofemoral-pain-syndrome/home/ovc-20169020  (Last visited on Nov. 11, 2016).  In order to conduct a compression test, the patient lies down with his or her knees flexed to 90 degrees.  The examiner applies pressure to the plantar aspect of the heel, applying an axial load to the tibia while simultaneously internally & externally rotating the tibia.  A compression test is positive if during the test the patient experiences pain and knee clicking.  A positive test can imply a meniscus tear.  Minnesota State University, Special Tests, http://ahn.mnsu.edu/athletictraining/spata/kneemodule/specialtests.html/ (last visited on Nov. 1, 2016). The test is performed by having the patient lie down with their hip and knee bent to 90 degrees.  The physician then grasps the heel in one hand and places the other hand over the knee, with the thumb and fingers on the joint line.  The physician then gently rotates the Tibia with the heel internally rotated with a mild valgus force (for the lateral compartment) and externally rotated with a mild varus force (for the medial compartment).  The McMurray test is used to evaluate individuals for tears in the meniscus of the knee.  A tag, caused by a tear will cause a palpable or even audible click on extension of the knee.  A positive test indicates a tear of the medial meniscus.  University of California, San Francisco, Sports Medicine, http://orthosurg.ucsf.edu/patient-care/divisions/sports-medicine/conditions/physical-examination-info/knee-physical-examination/.

20 C.F.R. § 404.1529(c)(3). Because the ALJ failed to specifically articulate how he made his credibility determination, the undersigned concludes that the ALJ's credibility assessment is unsupported by substantial evidence.

### IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).

Here, evidence of disability is not overwhelming and therefore, a remand for further proceedings is proper so that the ALJ can properly assess all opinion evidence of record anew in light of the foregoing findings.

### V.

**IT IS THEREFORE RECOMMENDED THAT**: (1) the Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**; (2) this matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and (3) this case be **CLOSED**.

Date:   February 7, 2017                               s/ Michael J. Newman
                                                       Michael J. Newman
                                                       United States Magistrate Judge

10

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).